SEAN TAMURA-SATO, SBN 254092
seant@minamitamaki.com
LISA P. MAK (Cal. SBN 260281)
lmak@minamitamaki.com
MINAMI TAMAKI LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

*Attorneys for Plaintiff Marilyn Fong*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Marilyn Fong, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | |
| AUDI AG; AUDI OF AMERICA, INC.; AUDI OF AMERICA, LLC; BAYERISCHE MOTOREN WERKE AG; BMW OF NORTH AMERICA, LLC; DAIMLER AG; MERCEDES-BENZ USA; MERCEDES-BENZ U.S. INTERNATIONAL; MERCEDES-BENZ VANS, LLC; DR. ING. H.C.F. PORSCHE AG; PORSCHE CARS OF NORTH AMERICA, INC.; VOLKSWAGEN AG; VOLKSWAGEN GROUP OF AMERICA, INC. | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

1.   Plaintiff Marilyn Fong ("Plaintiff"), on her own behalf and on behalf of all others similarly situated, brings this action for damages and injunctive relief against the following Defendants: Audi AG, Audi of America, Inc. and Audi of America, LLC (collectively "Audi"); Bayerische Motoren Werke AG and BMW of North America, LLC (collectively "BMW"); Daimler AG, Mercedes-Benz USA, Mercedes-Benz U.S. International and Mercedes-Benz Vans, LLC (collectively "Mercedes-Benz"); Dr. Ing. h.c.F. Porsche AG and Porsche Cars of North America, Inc. (collectively "Porsche"); Volkswagen AG and Volkswagen Group of America, Inc. (collectively "Volkswagen") (collectively "Defendants"). Plaintiff alleges, based on information and investigation, as follows:

## NATURE OF THE ACTION

2.   This putative class action is brought against the Defendants and co-conspirators who shared commercially-sensitive information and reached unlawful agreements regarding automotive technology, costs, suppliers, market, emissions equipment and other competitive attributes thereby causing injury to Plaintiff and class members (collectively ("Plaintiffs").

3.   This action arises out of a two decade-long conspiracy among German automotive manufacturers to stifle technological advancements, eliminate competition, and increase the prices of German automobiles. Over the last five years, Defendants met through at least 60 working groups, and 1,000 meetings, involving more than 200 employees.

4.   "Class Vehicles" as used herein refers to automobiles sold by the Defendants under the following five brands: Mercedes-Benz, Porsche, Audi, BMW, and Volkswagen.

5.   In a document dated July 4, 2016, Volkswagen divulged the existence of an automotive manufacturing conspiracy concerning the "development of [Defendants'] vehicles, costs, suppliers and markets for many years, at least since the 1990s, to the present day."

6.   The European Commission ("EC") is currently investigating potentially anticompetitive activities by the Defendants.

7.   Volkswagen and Daimler have reportedly admitted to participating in the

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

**CLASS ACTION COMPLAINT**

conspiracy and applied for leniency from the EC in exchange for their cooperation.

8.    As a result of Defendants' anticompetitive actions, Plaintiff and the Classes paid more for Class Vehicles than they should have in a competitive market.

9.    The Defendants' anticompetitive actions substantially affected interstate trade and commerce in the United States.

10.    The Defendants' anticompetitive actions caused antitrust injury to Plaintiff and members of the Classes.

11.    Plaintiff seeks to represent all persons and entities who purchased or leased a Class Vehicle from at least as early as January 1, 1990 through such time as the anticompetitive effects of the Defendants' conduct ceased ("Class Period").

## JURISDICTION AND VENUE

12.    Plaintiffs bring this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure equitable and injunctive relief against Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1).  Plaintiffs also assert claims for actual and exemplary damages pursuant to state laws, and seek restitution, damages, and other relief from the Defendants.  Plaintiffs also seek attorneys' fees and costs under federal and state law.

13.    This Court has jurisdiction over the subject matter of this action pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26), Section 1 of the Sherman Act (15 U.S.C. § 1), and Title 28, United States Code, Sections 1331 and 1337. This Court has subject matter jurisdiction of the state law claims pursuant to 28 U.S.C. §§ 1332(d) and 1367, in that this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed Classes are citizens of a state different from the Defendants.

14.    Venue is proper in this District pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22), and 28 U.S.C. §§ 1391 (b), (c), and (d), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District, and one or more of the Defendants reside, are licensed to do business in, are doing business in, had agents

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 3 -

**CLASS ACTION COMPLAINT**

in, or are found or transact business in this District.

15.    This Court has *in personam* jurisdiction over the Defendants because each, either directly or through the ownership and/or control of their subsidiaries, *inter alia*: (a) transacted business in the United States, including in this District; (b) directly or indirectly sold or marketed substantial quantities of Class Vehicles in the United States, including in this District; (c) had substantial aggregate contacts with the United States, including in this District; or (d) were engaged in an illegal conspiracy in restraint of trade that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to, the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this District. Defendants also conduct business throughout the United States, including in this District, and have purposefully availed themselves of the laws of the United States.

16.    Class Vehicles manufactured abroad by Defendants and sold in the United States are goods brought into the United States for sale, and therefore constitute import commerce.

17.    Defendants engaged in conduct (both inside and outside of the United States) that caused direct, substantial and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States.

18.    The activities of Defendants and their co-conspirators were within the flow of, were intended to, and did have, a substantial effect on interstate commerce in the United States.

19.    Defendants, directly and through their agents, engaged in anticompetitive activities affecting all states.

20.    Defendants' conspiracy and anticompetitive conduct described herein caused persons in the United States who purchased or leased a new Class Vehicles to pay unlawfully inflated prices. Defendants' anticompetitive conduct, and its effect on United States commerce, proximately caused antitrust injury in the United States.

///

///

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

**CLASS ACTION COMPLAINT**

## PARTIES

### Plaintiff

21.     Plaintiff Marilyn Fong is a California resident.  In or around August 2014, Ms. Fong purchased a 2014 Volkswagen Golf TDI in Salinas, California.  Ms. Fong suffered injury as a result of Defendants' illegal conduct as alleged herein.

### Defendants

22.     When Plaintiffs refer to a corporate family or companies by a single name in the Complaint, they are alleging that one or more employees or agents of entities within that corporate family engaged in conspiratorial acts on behalf of every company in that family. The individual participants entered into agreements on behalf of their respective corporate families.

### The Audi Defendants

23.     Defendant Audi AG is a German corporation with its principal place of business in Ingolstadt, Germany. Audi AG is the parent company of Audi of America, Inc. and Audi of America, LLC and also is a wholly owned subsidiary of Volkswagen AG. Audi AG designs, develops, manufactures, and sells the Class Vehicles at issue that were purchased throughout the United States, including this district during the Class Period.  Audi AG directs the activities of its subsidiaries which act as its agents selling Class Vehicles throughout the United States.

24.     Defendant Audi of America, Inc. is incorporated in New Jersey, and does business in all fifty states and the District of Columbia, with its principal place of business in Herndon, Virginia.

25.     Defendant Audi of America, LLC is incorporated in Delaware, and does business in all fifty states and the District of Columbia, with its principal place of business in Herndon, Virginia.  Audi of America, LLC is a wholly owned subsidiary of Audi AG, and it engages in business, including the advertising, marketing, and sale of Audi automobiles, throughout the United States.

### The BMW Defendants

26.     Defendant Bayerische Motoren Werke AG ("BMW AG") is a German holding company and vehicle manufacturer. BMW AG is headquartered in Germany. BMW AG,

MINAMI TAMAKI, LLP
360 Post Street, 8ᵗʰ Floor
San Francisco, CA  94108
Tel: (415) 788-9000
Fax (415) 398-3887

**CLASS ACTION COMPLAINT**

together with its subsidiaries, develops, manufactures, and sells cars and motorcycles worldwide, including the Class Vehicles at issue that were purchased throughout the United States, including this district during the Class Period.

27.     Defendant BMW North America, LLC is a Delaware limited liability corporation with its principal place of business in Woodcliff Lake, New Jersey.  BMW of North America is the United States importer of BMW vehicles.

**The Mercedes-Benz Defendants**

28.     Defendant Daimler Aktiengesellschaft ("Daimler AG") is a foreign corporation headquartered in Stuttgart, Germany. Daimler AG designs, engineers, manufactures, tests, markets, supplies, sells and distributes the Class Vehicles at issue that were purchased throughout the United States, including this District, during the Class Period.  Daimler AG is the parent company of Mercedes-Benz USA, LLC.

29.     Defendant Mercedes-Benz USA, LLC is a Delaware limited liability corporation with its principal place of business in Atlanta, Georgia.  Mercedes-Benz USA LLC operates a regional sales office, a parts distribution center, and a customer service center in New Jersey. Mercedes-Benz USA, LLC designs, manufactures, markets, distributes and sells the Class Vehicles at issue that were purchased throughout the United States, including this District, during the Class Period.

30.     Defendant Mercedes-Benz U.S. International, Inc. is a corporation organized and existing under the laws of Alabama, with its principal place of business in Vance, Alabama. Mercedes-Benz U.S. International, Inc. is a wholly-owned subsidiary of Daimler AG.  Mercedes-Benz U.S. International, Inc. manufactures Daimler-Mercedes diesel vehicles distributed and sold throughout the United States, including this District, during the Class Period.

31.     Defendant Mercedes-Benz Vans, LLC is a Delaware limited liability corporation with its principal place of business in Ladson, South Carolina.  Mercedes-Benz Vans, LLC is a wholly owned U.S. subsidiary of Daimler AG.   Mercedes-Benz Vans, LLC manufactures Daimler-Mercedes diesel vehicles distributed and sold throughout the United States, including this District, during the Class Period.

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 6 -

**CLASS ACTION COMPLAINT**

**The Porsche Defendants**

32.     Defendant Dr. Ing. h.c. F. Porsche AG is a German corporation with its principal place of business located in Stuttgart, Germany. Porsche AG is a wholly-owned subsidiary of Volkswagen AG. Porsche AG designs, develops, manufactures, and sells the Class Vehicles at issue that were purchased throughout the United States, including this district during the Class Period.

33.     Defendant Porsche Cars North America, Inc. is incorporated in Delaware with its principal place of business in Atlanta, Georgia.  Porsche Cars North America, Inc. is a wholly-owned U.S. subsidiary of Porsche AG and advertises, markets, and sells Class Vehicles in all fifty states.  Porsche Cars North America, Inc. maintains a network of 189 dealers throughout the United States.

**The Volkswagen Defendants**

34.     Defendant Volkswagen AG is a German corporation with its principal place of business in Wolfsburg, Germany.  Volkswagen AG is the parent company of Volkswagen Group of America, Inc., Audi AG, and Porsche AG.

35.     Defendant Volkswagen Group of America, Inc. is incorporated in New Jersey, and does business in all fifty states and the District of Columbia, with its principal place of business in Herndon, Virginia. Volkswagen Group of America, Inc. advertises, markets, and sells Volkswagen vehicles through the United States, including in this district during the Class Period.

## AGENTS AND CO-CONSPIRATORS

36.     Each Defendant acted as the principal of or agent for the other Defendant with respect to the acts, violations, and common course of conduct alleged herein.

37.     Robert Bosch GmbH is a German multinational engineering and electronics company headquartered in Gerlingen, Germany. Robert Bosch GmbH, directly and/or through its North-American subsidiary Robert Bosch LLC designs, manufactures, develops, and supplies automotive technology.

38.     Robert Bosch LLC is a Delaware limited liability company with its principal

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel (415) 788-9000
Fax (415) 398-3887

- 7 -

CLASS ACTION COMPLAINT

place of business in Farmington Hills, Michigan. Robert Bosch LLC is wholly owned and controlled by Robert Bosch GmbH. Robert Bosch LLC worked in conjunction with its parent company—Robert Bosch GmbH—to design, manufacture, develop, and supply automotive technology to the Defendants for use in the Class Vehicles.

39.     Various other persons, partnerships, sole proprietors, firms, corporations and individuals not named as Defendants in this lawsuit, and individuals, the identities of which are presently unknown, have participated as co-conspirators with the Defendants in the offenses alleged in this Complaint, and have performed acts and made statements in furtherance of the conspiracy or in furtherance of the anticompetitive conduct.

## FACTUAL ALLEGATIONS

40.     Beginning at least as early as the 1990s, Defendants shared competitive and sensitive information, and entered into agreements regarding technology, costs, suppliers, market, emissions equipment and other competitive attributes of their automobiles.

41.     Defendant "working groups" met hundreds (if not thousands) of times to share non-public, commercially-sensitive information and otherwise colluded to eliminate and restrain competition.  Over the last five years alone, Defendants shared competitively sensitive information through 60 working groups and over 1,000 meetings.  These contacts involved at least 200 employees.

42.     Defendants agreed to restrict competition with respect to technological developments.  Working group meetings established rules specifying that no one manufacturer could be so far ahead in terms of innovations that it would cause another to lose sales. According to *Der Spiegel*, "When a manufacturer introduced a breakthrough technology, the others had to be capable of offering this technology relatively quickly as well." The Defendants thus created their own market dominance by not competing on technology.

43.     Due to the conspiracy alleged herein, the normal pace of innovation was replaced by cartel-dictated staging.

44.     The German publication *Der Spiegel* first broke news of this conspiracy by publishing a report on the cooperation between Audi, BMW, Mercedes-Benz, Porsche, and

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 8 -

CLASS ACTION COMPLAINT

Volkswagen on July 21, 2017.

45.     Defendants limited manufacturer membership in the conspiracy.  During the Class Period, Defendants rejected requests from Jaguar, Volvo, Renault, and Fiat to join their exchange of information.

46.     Defendants' anticompetitive activities have prompted competition international authorities to open investigations into the Defendants' conduct.

**The AdBlue Tank Agreements**

47.     Defendants coordinated the size of AdBlue tanks used in Class Vehicles.

48.     AdBlue is an aqueous reductant agent that is used with a Selective Catalytic Reduction ("SCR") system to clean the emissions disseminated from diesel vehicles. AdBlue tanks are also called Diesel Exhaust Flued ("DEF"). Urea is a component of DEF and AdBlue. Specifically, 32.5% of high grade environmental urea and 67.5% deionized water make up what is known as DEF or AdBlue. AdBlue/DEF, along with the SCR system, enables manufacturers to remain compliant with emissions standards.

49.     In around September 2008, Defendants unlawfully agreed to reduce their costs by using 8-liter tanks for AdBlue/DEF.  According to Volkswagen, "[a]n internal Audi presentation resulted in a commitment by German automobile manufacturers at the executive level" to collude on tank size. The Defendants believed that use of such tanks would save the equivalent of about €80 per vehicle.

50.     The 8-liter tank also created more cargo room for luxury items such as golf clubs, and allowed for additional premium vehicle options.

51.     In 2010, Defendants agreed to change the size of their AdBlue tanks in the U.S. to 16-liters.  Although Defendants knew that a 16-liter tank was insufficient to meet new U.S. emissions standards, they agreed to a 16-liter tank in order to maintain a "coordinated approach" with respect to tank sizes. The "coordinated approach" was designed to prevent U.S. emissions regulators from questioning how some companies could use less AdBlue to meet emissions standards while others needed more.

52.     Defendant Audi wrote in an email that a "minimum tank volume of 19 liters"

MINAMI TAMAKI, LLP
360 Post Street, 8ᵗʰ Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 9 -

CLASS ACTION COMPLAINT

was needed based on "average AdBlue consumption" to comply with U.S. requirements. *Der Spiegel* has reported that the Defendants' found it "absolutely necessary to have a 'coordinated approach' with respect to tank sizes."

53.     Volkswagen knew that it could still pass U.S. emissions testing with a 16-liter tank because it had designed a work-around that enabled its vehicles to pass emissions testing even without adequately sized AdBlue tanks.

54.     This work-around is commonly referred to as a "defeat device" and is at the heart of Volkswagen's infamous 2015 "diesel-gate" scandal. Volkswagen and its subsidiaries installed software in its vehicles that could sense when the car was being tested and make emission control adjustments so that the vehicles' emissions were lower during testing than on the road.

55.     Volkswagen admitted to using this defeat device software to lie and mislead the Environmental Protection Agency ("EPA") and U.S. consumers regarding the environmental friendliness of their "clean" vehicles. Volkswagen paid over $20 billion in civil and criminal penalties for deploying the "defeat device" to cheat emissions compliance regulations, *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litig.*, MDL No. 2672 CRB (JSC) ("Volkswagen 'Clean Diesel' Litigation") (settlement of $14.7 billion for the consumer class); *United States v. Volkswagen AG*, No. 16-cr-20394 (E.D. Mich. 2016) (settlement with DOJ for $ 4.3 billion). There is currently a class action pending against Mercedes for similar conduct, *Albers et al. v. Mercedes-Benz USA LLC*, No. 16-881 (D.N.J. 2017).

56.     As recently revealed, the conspirators determined that a "coordinated scenario" was needed "across the board" to "avoid at all costs" an "arms race" among the manufacturers. This "coordinated scenario" eliminated competition and the benefits of innovation that flow from competition.

### Other Agreements to Limit Technology

57.     Defendants conspired on virtually all areas of technological innovation.  These agreements resulted in improvements in design and engineering occurring in near-lock-step.

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

**CLASS ACTION COMPLAINT**

58.     One of the Defendants' working groups set the maximum speed at which convertible roofs could be opened and closed (50 kilometers per hour).

59.     The "clutch" working group discussed when the parking lock should be activated, and minutes following a group meeting specifically sought clarification as to whether there was a "working group standstill agreement."

60.     Other working groups focused on brake controls and seat systems.

61.     On or about September 24, 2013, the "air suspension" working group met to exchange information about supplier performance, presumably with the goal of determining who would continue supplying the cartel.   In this particular meeting, Mercedes-Benz and Porsche shared specific information about the performance of ZF Friedrichshafen, a company that had been supplying Defendants with parts for suspensions.

### Defendants Targeted Marketing and Sales to U.S. Consumers

62.     The Defendants carefully curated their marketing and targeted U.S. consumers for decades.   The Defendants have sold millions of vehicles to consumers throughout the United States during the class period.

63.     In a 2014 Super Bowl advertisement from Volkswagen, German engineers sprouted wings each time a Volkswagen automobile reached 100,000 miles.

64.     Claims of superior design and technology have been at the heart of BMW's marketing in the United States for decades.   BMW advertises its automobiles in the United States as "the ultimate driving machine," powered by "performance, design, innovation and efficiency."

65.     BMW has promoted its cars, including the cars of its subsidiary, MINI USA, in American entertainment.   As one example, the MINI Cooper S was featured in the video game *The Bourne Conspiracy*, released by Vivendi Games in the United States in June 2008.

66.     Another example of BMW product placement in the United States with a heavy focus on technology is *The Italian Job*, an American movie released in 2003 that featured numerous car chase scenes in which drivers of MINI Coopers (a BMW subsidiary) are chased by motorcycles through tunnels.   The movie showcased the highly recognizable MINI Coopers as high-performance vehicles.

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 11 -

CLASS ACTION COMPLAINT

67.     Mercedes-Benz similarly publicizes its engineering innovation, targeting U.S. consumers.   In 2011, Mercedes-Benz launched a brand campaign celebrating "125 Years of Innovation."   The Mercedes-Benz USA website touts Daimler's history as an innovator to U.S. consumers: "Leading through innovation.   Even more than its meticulous engineering, Mercedes-Benz is defined by its continuous innovation.   Since inventing the car in 1886, we've simply never stopped reinventing it."

### The Defendants Met with U.S. Regulators to Obtain Permission to Sell Vehicles in the United States

68.     The State of California has passed laws to protect its citizens from pollution. Automobile manufacturers selling vehicles in California and in states adopting California standards must abide by these laws, which are enforced by the California Air Resources Board ("CARB").

69.     The Defendants specifically sought approval from U.S. regulators of vehicles built specifically for sale to U.S. consumers.  The Defendants' conspiracy targeted CARB with respect to their "clean diesel" agreements.

70.     To encourage the Environmental Protection Agency ("EPA") and CARB regulators to permit the sale of diesel automobiles in the United States, the Defendants engaged in marketing campaigns that included shipping vehicles from Germany to the United States so that regulators could drive them.

71.     For example, German manufacturers, including Mercedes-Benz and VW, participated in a "Clean Diesel Media Ride-and-Drive" hosted by Bosch on January 31, 2006, followed by a February 2, 2006 "Clean Diesel Symposium" in Sacramento, California.   The Clean Diesel events targeted journalists, environmentalists, policymakers, and regulators to promote "the benefits of modern clean diesel technology and understand the role of clean diesel vehicles for California's consumers."

72.     Defendants' U.S. subsidiaries acted as agents to their German parents in connection with the sale and marketing of German Automobiles.  Defendants' U.S. subsidiaries played an important role in implementing the scheme.  Defendants' U.S. subsidiaries sold and

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

**CLASS ACTION COMPLAINT**

marketed the Class Vehicles and negotiated with U.S. and California regulators regarding compliance with emissions requirements and other U.S. law.

73.     Each of the Defendants has a subsidiary with a presence in this District, as individuals the San Francisco Bay Area purchase tens of thousands of German Automobiles a year.

**The Market for German Automobiles**

74.     German automobiles are a differentiated product market and are distinct from those manufactured by competitors.

75.     Each Defendant knew and understood that its closest competition among U.S. consumers were the other Defendants.  Second-choice surveys of German automobile purchases consistently show that consumers who purchased automobiles from one of the Defendants would have purchased from another Defendant group.

76.     The Defendants' collusive activities were in stark contrast with general market perception of German auto manufacturers, which Defendants actively cultivated.

77.     German automobiles are, by reputation, among the best-engineered vehicles in the world.  The Defendants have spent many millions of dollars advertising the virtues of German engineering.

78.     Volkswagen's long used tagline, "That's the power of German engineering," conveyed that customers would receive cutting edge technology.  "Volkswagen has long touted 'German engineering' as the key difference between its cars and their competitors." Volkswagen's Vice President of Marketing, Vinay Shahani, noted of the ad, "We are thrilled with this year's creative, which highlights the enthusiasm around our brand and our vehicles' German engineering in a humorous spot that embodies the Volkswagen spirit."

79.     BMW boasts of its "pure BMW performance" and "innovative eDrive technology" and claims that "[a]t the heart of every BMW is advanced engineering that ensures maximum power and performance."  "Always innovative, BMW has pioneered technology that creates exhilarating and efficient driving experiences," BMW claims.  BMW publicized its 45 years of Bavarian engineering excellence in part by producing a six-part video on the history of

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 13 -

**CLASS ACTION COMPLAINT**

the 5-Series.

80.    Audi's company motto is "Vorsprung durch Technik," or "advantage [over other companies] through technology." Audi has also used the tagline "Truth in Engineering" in its print and television advertising.

81.    German automobiles command a premium price in the United States due to promises of superior innovation and engineering. That Defendants have shared cost information with one another ensures that Class Vehicles are consistently priced at a premium.

82.    Defendants shared competitively sensitive information concerning their costs, suppliers, as well as many aspects of automobile design and testing. The information shared by the Defendants enabled them to determine the prices at which German Automobiles were to be sold.

83.    Ordinarily, innovation is strongly correlated with competition and the market rewards innovators by supporting their products priced at a premium.

84.    Due to their unique place in the U.S. market, brand equity, and marketing campaigns, the Defendants enjoy price inelasticity for their automobiles. Price inelasticity means that because demand for Class Vehicles is strong, consumers will continue to purchase Class Vehicles even if prices increase or are high relative to other automobiles.

85.    Defendants' secret agreements to let the Defendants appear as innovators permitted them to levy unlawful, unearned premiums for their automobiles sold in the United States.

86.    Class members thus paid a premium for German Automobiles across classes of automobiles because the Defendants had a reputation for engineering excellence and cutting edge technology.

87.    The premiums paid are supra-competitive because the Defendants used their market power to suppress competition for the very technological advances consumers sought.

**Pending Investigations**

88.    On July 22, 2017, the European Commission ("EC") announced that it was investigating allegations of an antitrust cartel among a group of major German automobile

MINAMI TAMAKI, LLP
360 Post Street, 8ᵗʰ Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 14 -

CLASS ACTION COMPLAINT

manufacturers including Defendants Volkswagen and its subsidiaries, Audi and Porsche, Daimler, and its subsidiaries Mercedes-Benz and Smart, and BMW.

89.    European antitrust officials, the EC and its German counterpart, the Bundeskartellamt, have all confirmed that they received information from the Defendants that may relate to the operation of an antitrust cartel dating back as early as the 1990s.

90.    As part of its investigation, the EC has confiscated documents from the Defendants and interviewed witnesses in connection with the alleged cartel.

91.    According to Volkswagen's admissions to German antitrust officials, the Defendants entered into potentially unlawful agreements regarding "vehicle development, brakes, petrol and diesel engines, clutches and transmissions as well as exhaust treatment systems."

92.    According to reports, Volkswagen and Mercedes-Benz (Daimler) have both come forward to European regulators admitting participation in an antitrust conspiracy and attempted to receive leniency. Mercedes-Benz (Daimler) has reportedly obtained leniency while Volkswagen is purportedly eligible for a reduction in fines in exchange for its cooperation.

93.    The United States Department of Justice's Antitrust Division announced on or about July 25, 2017 that it is also investigating the matter.

**Defendants' Past Violations and Collusion**

94.    This is only the most recent of many schemes by the Defendants and other automobile manufacturers to evade U.S. laws.

95.    As stated *supra* Volkswagen admitted that it used unlawful "defeat devices" to cheat on diesel emissions tests. In the United States alone, Volkswagen has paid more than $20 billion in criminal penalties and civil restitution as a result of its unlawful scheme.

96.    In 2016, Daimler and other European truck makers (including Volkswagen-owned, MAN) were revealed to be parties to a truck price-fixing cartel. Volkswagen avoided fines by seeking leniency in exchange for cooperation with regulators. Daimler paid more than $1 billion in fines to the EC for its role in the cartel.

///

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 15 -
CLASS ACTION COMPLAINT

**The Class Vehicles Market is Susceptible to Collusion**

97.     The market for Class Vehicle market in the United States has characteristics that make it susceptible to collusion. Those characteristics are (1) high barriers to entry; (2) inelasticity of demand; and (3) high concentration.

98.     <u>High Barriers to Entry</u>: Collusion that lowers costs for manufacturers while increasing the price of the product normally would attract new market entrants. However, where barriers to entry are high, new entrants are less likely to enter in response to supra-competitive pricing. Barriers to entry thus facilitate cartels.

99.     Here, there are substantial barriers to entry into the Class Vehicle market. Firms entering this market need to invest tens of millions of dollars in research and development, including engineering talent. Competitor firms would need to invest tens of millions of dollars more to build facilities and obtain the raw materials in order to produce automobiles.

100.     A new entrant also lacks long-standing customer relationships of incumbents.

101.     Notably, no non-German manufacturer was invited into the conspiracy, and no other significant German automobile manufacturer competed in any material way in U.S. sales during the Class Period.

102.     There are also high switching costs in that consumers are effectively locked into their Class Vehicle purchases, making it more difficult for new entrants to gain customers needed to succeed in the market.

103.     Defendants' unlawful collusion also serves as and increases the barriers to entry.

104.     <u>Inelastic Demand</u>: The Class Vehicle market also has inelastic demand.

105.     "Elasticity" is the sensitivity of changes of supply to changes in demand and vice versa.

106.     When demand is relatively inelastic, a market is more susceptible to a successful cartel because the cartel can raise prices without an off-setting decline in demand.

107.     Demand for Class Vehicles is highly inelastic. There are no close substitutes for Class Vehicles, such that price increases do not trigger product substitution by consumers.

108.     <u>High Concentration</u>: A highly concentrated market also is more susceptible to

MINAMI TAMAKI, LLP
360 Post Street, 8ᵗʰ Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

**CLASS ACTION COMPLAINT**

1    collusion.

2         109.    Here, Defendants make up essentially 100% of the Class Vehicle market.

3                              **CLASS ALLEGATIONS**

4         110.    Plaintiff brings this action both on behalf of herself and all others similarly situated

5    (the "Classes") pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and (b)(3).  The

6    Classes are defined as follows:

7         111.    A "Nationwide Class" seeking equitable and injunctive relief defined as follows:

8                    All persons and entities who, during the Class Period,
9                    purchased or leased, in the United States, a new German
                     Diesel Passenger Vehicle (as an indirect purchaser, and not
10                   for resale), which was manufactured or sold by a Defendant,
                     any current or former subsidiary of a Defendant, or any co-
11                   conspirator of the Defendants.

12                   Excluded from the Class are the Defendants, their parent
                     companies, subsidiaries, and affiliates, any co- conspirators,
13                   federal governmental entities and instrumentalities of the
                     federal government, states and their subdivisions, agencies
14                   and instrumentalities, and persons who purchased German
                     Diesel Passenger Vehicle directly or for resale.
15

16        112.    The "California Law Class" (including as further defined in the Claims section

17    below) seeking damages pursuant to California laws, defined as follows:

                     All persons and entities who, during the Class Period,
18                   purchased or leased, in California, a new German Diesel
                     Passenger Vehicle (as an indirect purchaser, and not for
19                   resale), which was manufactured or sold by a Defendant,
                     any current or former subsidiary of a Defendant, or any co-
20                   conspirator of the Defendants.

21
                     Excluded from the Class are the Defendants, their parent
22                   companies, subsidiaries, and affiliates, any co-conspirators,
                     federal governmental entities and instrumentalities of the
23                   federal government, states and their subdivisions, agencies
                     and instrumentalities, and persons who purchased German
24                   Diesel Passenger Vehicle directly or for resale.

25

26        113.    Following further investigation as well as discovery in the case, definitions of the

27    Classes, including the Class Periods defined above, may be modified by amendment, and Plaintiff

28    reserves the right to join additional class representatives.

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

**CLASS ACTION COMPLAINT**

114.   The Classes are individually so numerous that joinder of all members is impracticable.  Even though the exact number of members of the Class is unknown at this time, based on the nature of the trade and commerce involved, Plaintiff reasonably believes that there are at least thousands of members in the Classes and that their identities can be readily ascertained from records in the possession of Defendants and/or third parties.

115.   Class members are geographically dispersed throughout the United States and its territories.

116.   Plaintiff's claims are typical of the claims of the other members of the Classes because Plaintiff and the Class members were similarly affected by the Defendants' wrongful conduct in that they paid artificially inflated prices and maintenance costs for Class Vehicles purchased or leased from the Defendants (or their subsidiaries or co-conspirators).

117.   Plaintiff and members of the Classes have all sustained damages during the Class Period as a result of having purchased or leased one or more Class Vehicles indirectly (i.e., from a franchised dealership of one of the Defendants) from Defendants (or their subsidiaries or co-conspirators) at supra-competitive prices.  Defendants and their co-conspirators' anticompetitive conduct alleged herein, the impact of such conduct, and the relief sought are all issues or questions that are common to Plaintiff and the Classes.

118.   Plaintiff will fairly and adequately protect the interests of the Classes and has retained counsel competent and experienced in class action, antitrust, and consumer protection litigation.  Plaintiff's interests are coincident with, and not antagonistic to, the interests of the Classes.

119.   Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting individual Class members.

(a)   Whether the Defendants and their co-conspirators engaged in a combination and conspiracy to restrain competition and artificially inflate the price of, and otherwise eliminate or restrain competition concerning, Class Vehicles sold in the United States;

(b)   The identity of the conspirators;

(c)   The duration of the conspiracy and the acts carried out by Defendants and

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 18 -

**CLASS ACTION COMPLAINT**

1   their co-conspirators in furtherance of the conspiracy;

2         (d)    Whether the conspiracy violated the Sherman Act;

3         (e)    Whether the alleged conspiracy violated state antitrust, unfair

4   competition, and/or consumer protection laws;

5         (f)    Whether the Defendants unjustly enriched themselves to the detriment

6   of the Plaintiff and the members of the Classes entitling Plaintiff and the Classes to

7   disgorgement of benefits derived by Defendants;

8         (g)    Whether the conduct of the conspirators, as alleged in this Complaint,

9   caused injury to the business or property of Plaintiff and the members of the Classes;

10         (h)    The effect of the conspiracy on the prices of Class Vehicles sold in the

11   United States during the Class Period;

12         (i)    Whether Plaintiff and the members of the Classes had any reason to know

13   or suspect the conspiracy, or any means to discover the conspiracy;

14         (j)    Whether the conspirators fraudulently concealed the conspiracy's

15   existence from Plaintiff and the members of the Classes;

16         (k)    The appropriate injunctive and related equitable relief for the Classes;

17   and

18         (l)    The appropriate class-wide measure of damages for the Classes.

19       120.    A class action is superior to other available methods for the fair and efficient

20   adjudication of this controversy because joinder of all members of the Classes is impracticable.

21       121.    The prosecution of separate actions by individual members of the Classes would

22   impose heavy burdens upon the courts and the parties, and would create a risk of inconsistent or

23   varying adjudications of the questions of law and fact common to the Class. A class action would

24   achieve substantial economies of time, effort, and expense, and would assure uniformity of

25   decision as to persons similarly situated without sacrificing procedural fairness. There will be no

26   material difficulty in the management of this action as a class action on behalf of the Class.

27   Although the laws of different states are implicated in this Complaint, these laws are substantially

28   similar to one another and can be grouped together in manageable categories.

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel: (415) 788-9000
Fax (415) 398-3887

- 19 -

**CLASS ACTION COMPLAINT**

122.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendants.

**PLAINTIFF'S CLAIMS ARE NOT BARRED BY**

**THE STATUTE OF LIMITATIONS**

**Plaintiff Did Not and Could Not Discover Claims Until at Least July 21, 2017**

123.     Plaintiff and members of the Classes had no knowledge of the conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein, until (at the earliest) July 21, 2017, when the German publication *Der Spiegel* reported that Volkswagen disclosed its participation in the unlawful conspiracy.

124.     Plaintiff and members of the Classes are consumers and businesses that purchased or leased Defendants' Class Vehicles in the United States and not for resale.  They had no direct relationship or communication with the Defendants and therefore had no means by which they could have discovered the combination and conspiracy described before it began to be revealed in *Der Spiegel*.

125.     No information was available to Plaintiff and members of the Classes in the public domain prior to July 21, 2017 that disclosed Defendants' participation in unlawful coordination concerning the development of their vehicles, their costs and suppliers, or their and strategies for controlling emissions in diesel engines.

126.     For these reasons, the statute of limitations as to Plaintiff and the Classes' claims did not begin to run, and has been tolled with respect to the claims that Plaintiff and members of the Classes have alleged herein.

127.     All applicable statutes of limitations for Plaintiff and the Classes' claims have been tolled under the doctrine of fraudulent concealment.  Plaintiff and members of the Classes did not discover, and could not have discovered through reasonable diligence, the existence of the conspiracy alleged herein until at least July 21, 2017, when *Der Spiegel* began to disclose the Defendants' conspiracy.

128.     Before that time, Plaintiff and members of the Classes were unaware of

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 20 -

**CLASS ACTION COMPLAINT**

Defendants' unlawful conduct, and did not know before then that they were paying supra-competitive prices for Class Vehicles throughout the United States during the Class Period. No information, actual or constructive, was made available to Plaintiff and members of the Classes that indicated to Plaintiffs that they were being injured by Defendants' unlawful conduct. Moreover, the affirmative acts of Defendants, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection, including through years of admittedly "secret" meetings.

129. The Defendants' conspiracy also was inherently self-concealing. Class Vehicles are subject to antitrust regulation. A reasonable person under the circumstances would have believed the industry was competitive and not have been alerted to begin to investigate the legitimacy of Defendants' Class Vehicle prices before July 21, 2017 at the earliest.

130. Plaintiff and the members of the Classes could not have discovered the alleged contract, combination or conspiracy at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by the Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination, or conspiracy.

131. Throughout the course of the conspiracy, Defendants met secretly to communicate, and ultimately coordinate, about various aspects of the Class Vehicles industry, including technology, costs, supplies, markets, and emissions equipment. The Defendants' surreptitious meetings were concealed until at least July 21, 2017

132. Because the alleged conspiracy was both self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiff and members of the Classes had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until at least July 21, 2017, when *Der Spiegel* began to report Volkswagen's disclosure of the conspiracy.

133. For these reasons, the statute of limitations applicable to Plaintiff and the Classes' claims was tolled and did not begin to run until, at the earliest July 21, 2017.

///

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### Violation of Section 1 of the Sherman Act

### (Nationwide Class)

134.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

135.   During the Class Period, Defendants and their co-conspirators entered into a continuing agreement, combination and/or conspiracy in restraint of trade to artificially raise, fix, maintain, or stabilize prices for Class Vehicles sold in the United States, in violation of Section 1 of the Sherman Act

136.   The contract, combination or conspiracy resulted in an agreement, understanding or concerted action between and among the Defendants and their co- conspirators in furtherance of which the Defendants and their co-conspirators fixed, raised, maintained, and/or stabilized prices for Class Vehicles sold in the United States. Such contract, combination, or conspiracy constitutes a *per se* violation of the federal antitrust laws.

137.   The acts done by the Defendants as part of, and in furtherance of, the contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives during or in connection with the performance of their work and/or duties.

138.   The Defendants' anticompetitive acts were intentionally directed at the United States market for diesel passenger vehicles, and had a direct, substantial and foreseeable effect on interstate commerce by artificially raising prices of such vehicles sold in the United States.

139.   Defendants succeeded in fixing, raising, and/or stabilizing the prices of Class Vehicles sold in the United States during the Class Period.

140.   For purposes of formulating and effectuating their conspiracy, Defendants and their co-conspirators did those things they conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

141.   Defendants' conspiracy had the following effects, among others:

   i.      Price competition in the United States market for vehicles has been

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 22 -

**CLASS ACTION COMPLAINT**

1  restrained, suppressed, and/or eliminated; and,

2        ii.      Prices in the United States for Class Vehicles sold by Defendants and their

3  coconspirators have been fixed, raised, maintained, and/or stabilized at artificial supra-

4  competitive levels.

5        142.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

6  the other members of the Classes have been injured (and will continue to be injured) in their

7  businesses or property in that they have paid more for Class Vehicles than they otherwise would

8  have paid in a competitive market and incurred increased maintenance costs.

9        143.    Plaintiff and members of the Class are entitled to an injunction against Defendants

10  in order to stop the violations alleged herein.

11                          **SECOND CLAIM FOR RELIEF**

12          **Violation of State Antitrust and Unfair Competition Laws**

13                          **(California Law Class)**

14        144.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

15  allegation set forth in the preceding paragraphs of this Complaint.

16        145.    During the Class Period, Defendants and their co-conspirators entered into a

17  continuing agreement, combination or conspiracy in restraint of trade to artificially raise, fix,

18  maintain, and/or stabilize prices for Class Vehicles sold in the United States, in violation of the

19  state antitrust and unfair competition laws set forth below.

20        146.    The contract, combination or conspiracy resulted in an agreement, understanding

21  or concerted action between and among the Defendants and their co- conspirators in furtherance

22  of which the Defendants and their co-conspirators fixed, raised, maintained, and/or stabilized

23  prices for Class Vehicles sold in the United States, including the States or territories set forth

24  below.  Such contract, combination, or conspiracy was knowing and willful and constitute

25  violations of the state antitrust and unfair competition laws set forth below.

26        147.    Defendants succeeded in fixing, raising, maintaining and/or stabilizing the prices

27  of Class Vehicles sold in the United States during the Class Period.

28        148.    For purposes of formulating and effectuating their conspiracy, Defendants and

MINAMI TAMAKI, LLP
360 Post Street, 8ᵗʰ Floor
San Francisco, CA 94108
Tel (415) 788-9000
Fax (415) 398-3887

- 23 -

**CLASS ACTION COMPLAINT**

their co-conspirators did those things they conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

149.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the other members of the Classes have been injured (and will continue to be injured) in their businesses or property in that they have paid more for Class Vehicles than they otherwise would have paid in a competitive market and incurred increased maintenance costs.

150.     As a result of Defendants' unlawful conduct, Plaintiff and the other members of the Classes seek relief as permitted, including injunctive relief, damages and costs of suit, including reasonable attorneys' fees.

151.     By reason of the foregoing, and the fact that competition for Class Vehicles was restrained, suppressed, and eliminated throughout California, Defendants' conduct of entering into agreements in restraint of trade is in violation of California Bus. & Prof. Code §§ 16700, *et seq.*

### THIRD CLAIM FOR RELIEF

### Violation of State Unfair Trade Practice Laws

### (California Law Class)

152.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

153.     During the Class Period, Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair trade practices set forth below.

154.     The affirmative acts of Defendants, including acts in furtherance of the conspiracy, were wrongfully and fraudulently concealed by Defendants and carried out in a manner that precluded detection, including public statements regarding competition by Defendants' top leadership.

155.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the other members of the Classes have been injured (and will continue to be injured) in their businesses or property.

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 24 -

**CLASS ACTION COMPLAINT**

156.    As a result of Defendants' unlawful conduct, Plaintiff and the other members of the Classes seek relief as permitted, including injunctive relief, damages and costs of suit, including reasonable attorneys' fees.

157.    By reason of the foregoing, Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*

## FOURTH CLAIM FOR RELIEF

### Unjust Enrichment and Disgorgement

### (California Law Class)

158.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

159.    During the Class Period, the Defendants have been unjustly enriched through overpayments by Plaintiff and other members of the Classes through the resulting profits enjoyed by Defendants as a direct result of such overpayments.

160.    Plaintiffs and other members of the Classes' detriment and the Defendants enrichment were related to and flowed from the conduct challenged in this Complaint.

161.    The Defendants have been enriched and Plaintiff and other members of the Classes have been impoverished as a result of the Defendants' enrichment.

162.    The Defendants financially benefited, appreciated the benefit, and accepted the benefit conveyed upon them by Plaintiff and other members of the Classes as a result of the conduct alleged herein.

163.    The Defendants' enrichment was unjustified.

164.    The Defendants' retention of the benefit violates fundamental principles of justice, equity, and good conscience.

165.    Under common law principles of unjust enrichment, and under the circumstances alleged herein, it would be inequitable for the Defendants not to compensate Plaintiff and other members of the Classes for the benefit conferred on the Defendants and they should not be permitted to retain the benefits conferred via overpayments by Plaintiffs and other members of the

MINAMI TAMAKI, LLP
360 Post Street, 8ᵗʰ Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 25 -

CLASS ACTION COMPLAINT

1    Classes.

2        166.    Pursuit of administrative remedies against the Defendants under the circumstances

3    alleged herein would have been futile.

4        167.    As applicable and only as necessary, Plaintiffs and other members of the Classes

5    allege in the alternative that there is no adequate remedy at law.

6        168.    Plaintiff and other members of the Classes, therefore, seek disgorgement of all

7    profits resulting from such overpayments, and establishment of a constructive trust from which

8    Plaintiff and other members of the Classes may seek restitution, under the laws of California.

9                              **PRAYER FOR RELIEF**

10       WHEREFORE, Plaintiffs respectfully request that the Court:

11       A.    Determine that the claims alleged herein under the Sherman Act, state antitrust,

12   unfair competition, consumer protection and/or unfair trade practice laws may be maintained as a

13   Class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, and

14   Order that reasonable notice of this action be given to members of the Classes;

15       B.    Appoint Plaintiff as Class Representative for the Classes, and Counsel of Record

16   as Lead Class counsel;

17       C.    Adjudge and decree that the unlawful conduct, contract, conspiracy, or

18   combination alleged herein is:

19              i.    An unreasonable restraint of trade or commerce in violation of Section 1 of

20   the Sherman Act;

21              ii.   A per se violation of Section 1 of the Sherman Act; and,

22              iii.  An unlawful combination, trust, agreement, understanding and/or concert

23   of action in violation of the state antitrust and unfair competition laws set forth herein, as well as

24   in violation of the state and consumer protection and unfair trade practice laws set forth herein.

25       D.    Award damages to Plaintiff and the members of the California Law Class, to the

26   maximum extent allowed, and enter a joint and several judgment in favor of Plaintiff and the

27   members of such classes against Defendants, in an amount to be trebled to the extent allowed;

28       E.    Award restitution and/or disgorgement of profits unlawfully gained to Plaintiff and

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

**CLASS ACTION COMPLAINT**

members of the California Law Class, to the maximum extent allowed;

F.    Permanently enjoin and restrain Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

G.    Award Plaintiff and the members of the Classes pre- and post- judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

H.    Award Plaintiff and the members of the Classes their costs of suit, including reasonable attorneys' fees, as provided by law; and,

I.    Award Plaintiff and members of the Classes such other and further relief as the case may require and the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury, including pursuant to Federal Rule of Civil Procedure 38(b), on all issues where a right to such trial exists.

Dated: October 4, 2017

Respectfully submitted,

MINAMI TAMAKI LLP

By:    /s/ Sean Tamura-Sato
Sean Tamura-Sato

Counsel for Plaintiff Marilyn Fong

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 27 -

CLASS ACTION COMPLAINT